IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CARLO D. BATTAGLINI,**            Case No. 4:15 CV 1454

    Plaintiff,

    v.                            Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.                    MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Plaintiff Carlo D. Battaglini ("Plaintiff") filed a complaint against the Commissioner of Social Security ("Commissioner"), seeking judicial review of the Commissioner's decision to deny Disability Insurance Benefits and Supplemental Security Income pursuant to 42 U.S.C. § 405(g). (Doc. 1). The parties consented to the jurisdiction of the undersigned in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 17). For the following reasons, the Commissioner's decision is reversed and the case is remanded pursuant to sentence four of 42 U.S.C. § 405(g).

### PROCEDURAL BACKGROUND

Plaintiff filed for benefits (including Childhood Disability Benefits) on November 1, 2011, alleging disability as of December 21, 2008, due to learning disabilities, severe headaches, and frequent sinus infections. (Tr. 120, 130, 140). The claim was denied initially and on reconsideration. (Tr. 189-94, 196-201, 204-06). At a hearing on July 15, 2013, an administrative law judge ("ALJ") granted Plaintiff's request for a postponement to secure counsel. (Tr. 93-103, 227). Plaintiff (represented by counsel) and a vocational expert ("VE") testified at a full hearing on November 13, 2013. (Tr. 32-83). Following the hearing, the ALJ issued an unfavorable

decision finding Plaintiff not disabled. (Tr. 9-21). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-3); 20 C.F.R. §§ 404.955, 404.981. Plaintiff filed the instant action on July 23, 2015. (Doc. 1).

### FACTUAL BACKGROUND

**Personal and Vocational Background**

Plaintiff's date of birth is December 22, 1990. (Tr. 120). He has a twelfth grade education (with special education classes) and past work experience as an automobile repair assistant, maintenance/laborer, and janitor. (Tr. 56, 128). As of the hearing date, he lived with his parents and had a girlfriend of three years, but no children. (Tr. 45-46).

**Hearing Testimony**

At the hearing, Plaintiff and his mother testified his deficits in reading, writing, and math stem from a brain infection he suffered as an infant. (Tr. 59, 65). Plaintiff's mother testified as a result he suffered from memory loss which interfered with his ability to complete daily tasks. (Tr. 61, 66-68).

Plaintiff testified he last worked for his mother's cleaning company as a janitor, but he was unable to recall when he last worked. (Tr. 41-42, 57, 61). Plaintiff's mother made certain accommodations for him. (Tr. 57, 61-62). He testified it was not a full-time job, but could not recall how many hours he worked. (Tr. 41). Prior to that, he performed service on cars and was able to do so after others demonstrated tasks. (Tr. 43-44). Plaintiff generally had difficulty recalling information. (Tr. 42).

Plaintiff obtained a driver's license but stated, "I had someone read it to me and then it was on the computer for the other test and I had headphones." (Tr. 46). He drove a car "[w]henever [he had] to get something or when [he had] to be somewhere", but was unable to

2

read road signs. *Id.* He stated, "I don't know what road I'm on. I just know by like looking at them, like memorizing." *Id.*

Plaintiff testified that an average day consisted of watching television. *Id.* He testified he was illiterate. (Tr. 47, 49-50). He helped out his parents by performing household chores—mostly taking out the trash, vacuuming, and cleaning dishes—but needed them to first demonstrate the chore. (Tr. 47, 58). Plaintiff went to the mall and movie theater with his girlfriend and socialized with friends. (Tr. 47-48, 55). Plaintiff used a cell phone, but not a computer. (Tr. 48-49). Occasionally, he drank six to twelve beers, but had recently reduced his consumption. (Tr. 55).

The ALJ posed a hypothetical question to the VE involving an individual similarly situated to Plaintiff (same age, education, and work experience) who could perform light work with the following limitations: "[H]e would be limited to hearing and understanding simple, oral instructions or by learning by demonstration; he could perform simple, routine, and repetitive tasks; he's limited to a work environment free of fast-paced production requirements involving only simple work-related decisions and routine workplace changes." (Tr. 74). The VE opined the hypothetical individual could not perform Plaintiff's past work, but could perform other work in the national economy. (Tr. 74-76).

The second and third hypothetical scenarios were the same as the first, except the individual would be limited to handling and fingering frequently with the upper left extremity; and handling and fingering frequently bilaterally—respectively. (Tr. 76-77). The VE opined there would be jobs available in the national economy for such an individual. (Tr. 77).

The fourth hypothetical was the same as the first, except the individual was limited to occasional handling and fingering with the left upper extremity. (Tr. 77). The VE opined the

individual would be able to perform a few jobs available in lower numbers in the national economy, including usher and tanning salon attendant. (Tr. 77-78).

The final hypothetical—the fifth—was the same as the first, except the individual would be off-task. (Tr. 78). The VE noted that beyond the regularly-scheduled breaks, up to five percent of the workday would be allowable. *Id.*

**ALJ Decision**

In a decision dated February 13, 2014, the ALJ made the following finds of fact and conclusions of law:

1. Born on December 22, 1990, the claimant had not attained age 22 as of December 21, 2008, the alleged onset date.

2. The claimant meets the insured status requirements of the Social Security Act through June 30, 2014.

3. The claimant has not engaged in substantial gainful activity since December 21, 2008, the alleged onset date.

4. The claimant has the following severe impairments: essential tremors, borderline intellectual functioning, and learning disorder with impairment in math computation skills.

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

6. ***[T]he claimant has the residual functional capacity to perform light work . . . except he can frequently handle and finger objects bilaterally. He is limited to hearing and understanding simple oral instructions or learning by demonstration. He can perform simple, routine, and repetitive tasks. The work environment must be free of fast-paced production requirements, involve only simple work related decisions, and routine work place changes.

7. The claimant has no past relevant work.

8. The claimant was born on December 22, 1990 and was 17 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

9. The claimant has at least a high school education and is able to communicate in English.

10. Transferability of job skills is not an issue because the claimant does not have past relevant work.

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

12. The claimant has not been under a disability, as defined in the Social Security Act, from December 21, 2008, through the date of this decision.

(Tr. 12-21) (internal citations omitted).

**Relevant Medical Evidence**[1]

In 1993, when Plaintiff was two years old, he was hospitalized with a diagnosis of acute cerebellar ataxia. (Tr. 703). Brain testing revealed tonsillar ectopia. (Tr. 709). He was treated with intravenous immunoglobulins and eventually showed "some slight but progressive neurologic improvement." (Tr. 707).

Plaintiff had a pediatric neurology appointment on September 18, 2003, when he was twelve years old. (Tr. 466). His diagnoses included migraine, autoimmune disease "nec", and cerebellar ataxia "nec". *Id.* Dr. Bruce Cohen, M.D., noted Plaintiff's past medical history was remarkable for cerebellar ataxia, which he developed as a young child. (Tr. 467). Dr. Cohen treated him for that condition a decade earlier. *Id.* Dr. Cohen noted Plaintiff regained most of his motor and speech skills by age eight after undergoing rehabilitation, and that he currently was not ataxic. *Id.* He also noted Plaintiff suffered from severe learning disabilities and attended a special education school. *Id.* Plaintiff's mother reported he read below the kindergarten level, but Dr. Cohen noted Plaintiff exhibited good comprehension of spoken information. *Id.* Plaintiff's

---

1. Plaintiff challenges only the ALJ's analysis of Listing 12.05(C) (Intellectual Disability); therefore, the undersigned focuses on evidence related to such. Plaintiff waives challenge to all other issues. *Young v. Sec'y of Health and Human Servs.*, 925 F.2d 146, 149 (6th Cir. 1990).

mother stated she enrolled him in additional tutoring—to no avail. *Id.* Plaintiff's math skills were also below grade level, but not as severely impaired. *Id.* He had success with hands-on learning. *Id.* Dr. Cohen concluded "I would think his severe learning disability is directly linked to the autoimmune cerebellar dysfunction he suffered in 1993-1994." *Id.*

At an appointment years later, on January 24, 2012, Dr. Cohen noted while Plaintiff never learned to read or write he was "otherwise cognitively normal." (Tr. 531). An examination revealed a normal attention span and attention to details; no tangential thought process; intact judgment; mildly dysfluent, but prosodic speech without paraphasic errors; normal repetition; appropriate short term memory and fund of information; and a normal ability to follow instructions. (Tr. 532). Dr. Cohen noted a MRI showed an "11 mm right frontal centrum increased signal seen on T2 and FLAIR images" (he was unable to determine if this was new or old), and 2 cm left sinus polyp. (Tr. 532, 534-35). Dr. Cohen assessed Plaintiff with "[a]utoimmune cerebellar ataxia presenting as opsoclonus-myoclonus". (Tr. 532).

On April 30, 2012, Lena Naffaa, M.D., analyzed a brain MRI and determined it was not significantly different from the MRI in January 2012. (Tr. 686-87). Dr. Naffaa also noted an "[i]ncidental bilateral ethmoid air cell disease and 2.6 cm polyp or mucus retention cyst in the left maxillary sinus." (Tr. 687).

At an appointment on October 30, 2012, Hubert Fernandez, M.D., noted Plaintiff was alert and oriented to person, place, and date; and demonstrated normal attention, concentration, memory, fund of knowledge, and language function. (Tr. 691).

**Educational Records**

In spring 2007, when Plaintiff was in tenth grade, he took the Ohio Graduation Tests. (Tr. 512-15). He met state standards in mathematics, writing, and social studies, but failed to meet state standards in reading and science. *Id.*

On May 22, 2008, Plaintiff's teachers reevaluated Plaintiff and completed an Evaluation Team Report, pursuant to the Individuals with Disabilities Education Act. (Tr. 473). Plaintiff was in eleventh grade and all of his academic classes were taught by special education teachers. (Tr. 474). He earned mostly A's and B's in both his academic classes and a vocational program. *Id.*

As part of the evaluation, school psychologist Penny Parish-Brown administered the Wechsler Adult Intelligence Scale-III (WAIS-III). (Tr. 482-83). Plaintiff received a verbal IQ of 79 (eighth percentile), a performance IQ of 85 (sixteenth percentile), and a full scale IQ of 80 (ninth percentile). (Tr. 482). The results placed his cognitive ability within the borderline low average range of intellectual functioning. *Id.* Ms. Parish-Brown concluded "[Plaintiff] can be expected to work at a level below that of same-aged peers. His ability level may adversely affect his academic functioning. He will learn at a slower pace and have more difficulty remembering instruction." (Tr. 483).

Ms. Parish-Brown also administered the Woodcock Johnson Test of Achievement-III (WJ-III). (Tr. 484). She concluded:

> [Plaintiff's] achievement skills in all areas except Math Reasoning are significantly below those of same-aged peers and will have an adverse effect on his academic functioning. When compared with his cognitive ability, these achievement levels are below expectancy. [Plaintiff's] Math Reasoning skills are in the low average range, slightly below those of his peers and consistent with this intellectual ability.

(Tr. 485).

**Opinion Evidence**

*State Agency Reviewers*

On December 19, 2011, state agency reviewer Leslie Rudy, Ph.D., determined Plaintiff had a severe impairment of Borderline Intellectual Functioning, but that it did not meet Listing 12.02 (Organic Mental Disorders). (Tr. 124, 134, 144). She opined Plaintiff had moderate restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation. *Id.* Dr. Rudy noted Plaintiff was not significantly limited in his ability to understand, remember, and carry out very short and simple instructions; or in his ability to make simple work-related decisions. (Tr. 126, 136, 146). She also noted he was not significantly limited in his ability to socially interact with others, but would have some limitations in his ability to adapt. (Tr. 127, 137, 147).

On March 19, 2012, state agency reviewer Karla Voyten, Ph.D., affirmed Dr. Rudy's findings. (Tr. 158-62, 170-74, 182-86).

*Consultative Examiner*

On January 7, 2014, Joseph Konieczny, Ph.D., administered a psychological evaluation—with the exception of the Wechsler Adult Intelligence Scale-IV—which was administered by Carly Konieczny, BA, Psychology Aide. (Tr. 767). Plaintiff received a verbal comprehension score of 80, a perceptual reasoning score of 77, a working memory score of 63, a processing speed score of 68, and a full scale IQ of 68 (placing him in the "extremely low range of intellectual functioning for individuals his age."). (Tr. 769). These test results showed "a slight, but not significant, decline in full scale functioning" from prior testing. *Id.*

During the examination, Plaintiff stated he was unable to read or write at all. (Tr. 767). Although reflective of his intellectual limitations, Plaintiff's general thought content appeared normal. (Tr. 768). Plaintiff was pleasant, cooperative, maintained appropriate eye contact, and "responded readily to all questions and tasks posed to him." *Id.* His concentration and ability to attend to tasks revealed no indication of impairment. *Id.* Dr. Konieczny noted "[h]is level of speech appeared to be greater than would be anticipated given the results of intellectual testing" and "[o]verall, he seemed quite capable of expressing himself in a clear and coherent manner." *Id.*

Plaintiff demonstrated fair insight, mild deficits in judgment, and a slightly reduced level of efficiency. (Tr. 769). Dr. Konieczny noted that while Plaintiff participated "somewhat" in daily household chores, "[h]e would appear to require some degree of supervision and monitoring in the management of his daily activities and in handling his financial affairs." *Id.* He did, however, regularly socialize with friends. *Id.* Plaintiff drove a car, performed simple cooking, performed some cleaning and household activities, shopped, and managed his finances (but had no checking account, savings account, or credit cards). *Id.* Plaintiff showed no significant limitations in his ability to understand, remember, and carry out instructions; or in his attention, concentration, and persistence in single and multi-step tasks. (Tr. 770). Plaintiff, while capable of responding appropriately, did show mild deficits and limitations in his ability to respond appropriately to supervision and co-workers; and in his ability to respond to pressure in the work setting. *Id.*

Dr. Konieczny concluded Plaintiff suffered from Borderline Intellectual Functioning, Learning Disorder with Impairment in Reading and Comprehension, and Specific Learning Disorder with Impairment in Math Computation Skills. *Id.* He added that while Plaintiff

9

appeared sincere and appropriate, "results of the current intellectual testing place his capabilities in a range that could suggest a diagnosis of Intellectual Disability, [Plaintiff's] presentation and history would suggest a somewhat higher level of functioning than that which would be anticipated for an individual suffering from such a diagnosis." *Id.*

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the Court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The

Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 404.1520 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's RFC and can claimant perform past relevant work?

5. Can claimant do any other work considering his RFC, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.* The court considers the claimant's RFC, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff alleges the ALJ's Step-Three determination is not supported by substantial evidence because he failed to consider Listing 12.05(C). The Commissioner asserts this error is harmless.

**Step-Three Analysis**

The listings streamline the disability decision-making process by identifying individuals whose impairments are more severe than the statutory disability standard, preventing performance of any gainful activity (not just substantial gainful activity) regardless of age, education, or work experience. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citing 20 C.F.R. § 416.925(a)). The listings create a presumption of disability, making further inquiry unnecessary. *Id.* To qualify for benefits under a listing, a claimant must prove his impairment satisfies all the listing's specified medical criteria. 20 C.F.R. § 404.1525(d); *see also Zebley*, 493 U.S. at 530.

The claimant bears the burden of proving that a condition meets or equals a listed impairment at step three. *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 727-28 (6th Cir. 2004). A claimant must satisfy all the criteria to "meet" a listing. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). If the record raises a substantial question whether a claimant could qualify as disabled under a listing, an ALJ must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any listed impairment. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011).

There is no "'heightened articulation standard' in considering the listing impairments"; rather, the court considers whether substantial evidence supports the ALJ's conclusions. *Snoke v. Astrue*, 2012 WL 568986, at *6 (S.D. Ohio) (quoting *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006)). However, a reviewing court must find an ALJ's decision contains "sufficient analysis to allow for meaningful judicial review of the listing impairment decision." *Snoke*, 2012 WL 568986, at *6 (citing *Reynolds*, 424 F. App'x at 415-16); *see also May v.*

*Astrue*, 2011 WL 3490186, at *7 (N.D. Ohio 2012) ("In order to conduct a meaningful review, the ALJ's written decision must make sufficiently clear the reasons for his decision.").

Here, Plaintiff argues remand is required because the ALJ failed to explicitly analyze Listing 12.05(C) (Intellectual Disability). The ALJ's Step-Three analysis consisted of the following:

> The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> No treating or examining physician has indicated findings that would satisfy the severity requirements of any listed impairment. In reaching the conclusion that the claimant does not have an impairment or combination of impairments that meet or medically equal a listed impairment, the undersigned also considered the opinion of the State Agency medical consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process and reached the same conclusion (20 CFR 404.1527(f), 416.927(f) and Social Security Ruling 96-6p). All of the listings were considered in reaching this finding, with specific emphasis on Listing 11.18. * * *

(Tr. 15). The ALJ then discussed and explained why Plaintiff's mental impairments did not meet or medically equal Listings 12.02 and 12.09. (Tr. 15-16). Because the record raises a substantial question of whether Plaintiff's impairments met or equaled Listing 12.05(C) the ALJ erred in by not explicitly analyzing it. Indeed, the Commissioner acknowledges the error but asserts it is harmless. *See* Doc. 15, at 7 ("Plaintiff is correct that the ALJ should have considered Listing 12.05C explicitly.")

**Harmless Error**

Indeed, "an ALJ's failure to explain how he reached his Step Three meets or equals conclusion can constitute harmless error where the review of the decision as a whole leads to the conclusion that no reasonable fact finder, following the correct procedure, could have resolved the factual matter in another manner." *Woodall v. Colvin*, 2013 WL 4710516, at *12 (N.D.

13

Ohio). Thus, some courts have examined the record to determine whether the same disability outcome would have resulted had the ALJ compared the evidence to the listings as required. *See. e.g., Rabbers*, 582 F.3d at 656-57. "These courts have proceeded cautiously, however," being careful not to overstep the boundary of the standard of review. *Dodson v. Colvin*, 2016 WL 541571, at *15-16 (N.D. Ohio); *Rabbers*, 582 F.3d at 657-58; *see also Layton v. Colvin*, 2013 WL 5372798, at *8 (E.D. Mich.) ("This Court cannot speculate as to how the ALJ might have weighed [conflicting or inconclusive] evidence."). Thus, the inquiry for the undersigned is whether there is "conflicting or inconclusive evidence" not resolved by the ALJ or "evidence favorable to the claimant that the ALJ simply failed to acknowledge or consider" that prevents a finding of harmless error. *Rabbers*, 582 F.3d at 657-58.

Here, the Commissioner argues the omission of a Listing 12.05(C) analysis is harmless because Plaintiff did not, and could not, present a prima facie case he met or equaled the listing. (Doc. 15, at 7). The Commissioner concedes Plaintiff has a qualifying IQ score, and other impairments satisfying the "additional work-related limitation of function" requirement, but argues he lacks a required diagnosis of Intellectual Disability, pursuant to 12.05(C). (Doc. 15, at 7-8). Indeed, the Sixth Circuit has found harmless error where a plaintiff failed to meet his burden to show his impairment "met or medically equaled" a listing. *See, e.g., Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014).

Here, however, Plaintiff has presented evidence showing a possibility he meets or medically equals listing 12.05(C). *See Reynolds*, 424 F. App'x at 415-16 (remanding where "[n]o analysis whatsoever was done as to whether [the claimant's] physical impairments . . . met or equaled a Listing" and it was "possible that the evidence [the claimant] put forth could meet" the listing at issue.)

The diagnostic description of intellectual disability in 12.05 refers to "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Part 404, Subpt. P, § 12.05. To demonstrate intellectual disability, a claimant must establish three factors to satisfy the diagnostic description: 1) subaverage intellectual functioning; 2) onset before age twenty-two; and 3) adaptive-skills limitations. *Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 675 (6th Cir. 2009); *Daniels v. Comm'r of Soc. Sec.*, 70 F. App'x 868, 872 (6th Cir. 2003). Beyond these three factors, a claimant must also satisfy "any one of the four sets of criteria" in listing 12.05. *Foster v. Halter,* 279 F.3d 348, 354 (6th Cir. 2001). Listing 12.05(C) requires a claimant have a valid, verbal, performance, or full scale I.Q. of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. 20 C.F.R. Part 404, Subpt. P, § 12.05(C).

First, Plaintiff points to evidence in the record supporting his assertion he meets the diagnostic criteria. (Doc. 14, at 12). He points to treatment notes from Dr. Cohen stating he has cognitive deficiencies resulting in a "severe learning disability" which Dr. Cohen opined was the result of "autoimmune cerebellar dysfunction" he suffered as a young child. (Doc. 14, at 12-13 (citing Tr. 467)). Plaintiff also points to the opinion of the consultative examiner stating he "would appear to require some degree of supervision and monitoring in the management of his daily activities and financial affairs". (Doc. 14, at 13 (citing Tr. 769)). He alleges school records and testing reveal adaptive functioning deficits. (Doc. 14, at 13 (citing Tr. 396, 485, 487, 489)). Further, contrary to the Commissioner's assertion the listing requires a diagnosis of Intellectual Disability, for which she provides no citation (Doc. 15, at 8), a diagnosis is not required. *See*

15

*Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x. 553, 539 (6th Cir. 2014) (citing *Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x. 450, 452 (6th Cir. 2007)) ("Although an [Intellectual Disability][2] diagnosis is not a necessary prerequisite to satisfy Listing 12.05, its absence is probative for a 12.05C determination."). Because the ALJ failed to analyze Listing 12.05(C), it is impossible to ascertain whether the lack of diagnosis influenced his determination. While it is entirely possible that was the reason the ALJ determined Plaintiff did not meet or medially equal the listing—this Court cannot engage in post hoc rationalizations. *Simpson v. Comm'r of Soc. Sec.,* 344 F. App'x 181, 192 (6th Cir. 2009).

Second, pursuant to 12.05(C), Plaintiff asserts he meets the IQ requirement because he scored a full scale IQ of 68 on the Weschler Adult Intelligence Scale-IV. (Doc. 14, at 13-14 citing Tr. 769). The Commissioner does not dispute the score satisfies the listing. (Doc. 15, at 7). Notwithstanding the qualifying score, the CE diagnosed Plaintiff with Borderline Intellectual Functioning, rather than Intellectual Disability. (Tr. 769). The ALJ, however, failed to discuss or the inconsistency between the qualifying score and the CE's diagnosis and it is not up to this Court to speculate how the ALJ resolved these conflicts. *Rabbers,* 582 F.3d at 657-58. This Court cannot engage in post hoc rationalizations. *Simpson,* 344 F. App'x at 192.

Third, Plaintiff argues the ALJ's finding of a "severe impairment" with regard to his essential tremors satisfies the requirement of physical or other mental impairment imposing an additional and significant work-related limitation of function. (Doc. 14, at 14). The Commissioner does not dispute this. (Doc. 15, at 7-8).

Additionally, the Commissioner offers further arguments supporting affirmance because "*no doctor* in the record opined that Plaintiff met or equaled any listing" and because he failed to

---

2. The term "intellectual disability" has replaced "mental retardation". 78 Fed. Reg. 46,499 (August 1, 2013); *Peterson*, 552 F. App'x. at 533, n.1.

16

present an opinion on medical equivalence from any physician. (Doc. 15, at 9-10 (emphasis in original)). The Court does not reach these arguments, however, because Plaintiff has made a showing of a possibility he meets Listing 12.05(C) and the ALJ's failure to discuss this listing is reversible error.

Thus, pursuant to *Reynolds*, remand is necessary. 424 F. App'x at 416 ("The ALJ's error was not harmless, for the regulations indicate that if a person is found to meet a Listed Impairment, they are disabled within the meaning of the regulations and are entitled to benefits; no more analysis is necessary.") (citing 20 C.F.R. § 404.1520(a)(4)(iii)); *see also Risner v. Comm'r of Soc. Sec.*, 2012 WL 893882, at *5 (S.D. Ohio) ("The ALJ should, in the first analysis, assess whether the evidence put forth shows that Plaintiff meets or equals a Listing. Should he determine [he] does not, the ALJ must explain his decision with a discussion and analysis of the evidence."). "While the Commissioner may ultimately be correct that [Plaintiff] does not suffer from a listing level impairment, this Court cannot make such a determination without an appropriate Step Three analysis." *Brown v. Comm'r*, 2013 WL 3873230, at *7 (N.D. Ohio).

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the Court finds the ALJ's error in failing to analyze Listing 12.05(C) not harmless. The Commissioner's decision is reversed and the case remanded pursuant to sentence four for further proceedings consistent with this opinion.

IT IS SO ORDERED.

s/James R. Knepp II<br>
United States Magistrate Judge